**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **23-02443-eg**
Adversary Proceeding Number: **23-80057-eg**

### Order Granting Motion to Reconsider

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**09/17/2024**



*Elisabetta G. M. Gasparini*
US Bankruptcy Judge
District of South Carolina

Entered: 09/17/2024

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re, <br><br> Warren Taylor Peugh, <br><br><div align="right">Debtor(s).</div> <br> Tonthat Investment Group, LLC., <br><br><div align="right">Plaintiff(s),</div> <br> v. <br><br> Warren Taylor Peugh, <br><br><div align="right">Defendant(s).</div> | C/A No. 23-02443-EG <br><br> Adv. Pro. No. 23-80057-EG <br><br> Chapter 7 <br><br> **ORDER GRANTING MOTION TO RECONSIDER** |

**THIS MATTER** is before the Court on the Motion to Reconsider Dismissal of the above captioned adversary proceeding (the "Motion to Reconsider") filed by Tonthat Investment Group, LLC ("Plaintiff") against Warren Taylor Peugh ("Defendant" or "Debtor").[1] Defendant filed a response to the Motion to Reconsider (the "Response"),[2] to which Plaintiff replied (the "Reply").[3] The Court held a hearing on the Motion to Reconsider, after which the Court took the matter under advisement.

The question presented is straightforward: Should the Court reinstate the adversary proceeding after it was dismissed due to the parties' failure to abide to the scheduling order and inquiries of the Court? The particular facts of this case, however, render the decision more difficult. Despite Plaintiff's counsel acknowledging that they "dropped the ball," had Defendant alerted the Court to the settlement that had been reached between the parties—instead of sitting

---
[1] ECF Nos. 15 and 23, originally filed on July 12, 2024 and subsequently amended on July 22, 2024.
[2] ECF No. 24, filed July 24, 2024.
[3] ECF No. 30, filed August 26, 2024.

1

idly by and watching the proceeding derail to its advantage—the Court would not have dismissed the adversary proceeding. Accordingly, under the facts of this case, the Court will not allow its order dismissing the proceeding to stand.

This Court has jurisdiction of this proceeding under 28 U.S.C. §§ 1334 and 157, and the parties previously agreed that the Court has authority to enter a final order or judgment in connection with the proceeding.[4] Based upon the record before the Court, the arguments of the parties at the hearing, and the pleadings filed, the Court grants the Motion to Reconsider and makes the following findings of fact and conclusions of law:

## FACTUAL BACKGROUND

This adversary proceeding arises from a civil judgment granted in Plaintiff's favor against Defendant in relation to fraudulent conduct and other causes of action that may provide grounds for an exception to discharge under 11 U.S.C. § 523. On May 2, 2022, Plaintiff filed a civil action against Defendant and Defendant's business, JBJS, LLC ("JBJS"), after Defendant obtained a business loan from Plaintiff, defaulted on the loan, and sold the collateral securing the loan without turning over the sale proceeds to Plaintiff.[5] Plaintiff asserted several causes of action against Defendant, including breach of contract, fraud, and unfair and deceptive trade practices. On April 25, 2023, the General Court of Justice for the Superior Court of Mecklenburg County, North Carolina, entered summary judgment on all claims against Defendant after he failed to respond and awarded Plaintiff treble compensatory damages in the amount of $210,600.00 plus post-judgment interest at a rate of 8%.[6]

Defendant filed for Chapter 7 bankruptcy on August 16, 2023, commencing the above-

---

[4] ECF No. 8.
[5] *See* Amended Complaint, ECF No. 1.
[6] ECF No. 1, Ex. D.

2

captioned main bankruptcy case. In his Schedule E/F filed with the Chapter 7 voluntary petition, Defendant lists Plaintiff among the creditors with nonpriority unsecured claims against him.[7]

On December 4, 2023, Plaintiff's local counsel ("Local Counsel") filed a motion for Plaintiff's lead counsel ("Lead Counsel") to appear in Defendant's bankruptcy case *pro hac vice*, which the Court granted on December 11, 2023.[8] Plaintiff also initiated this adversary proceeding against Defendant on December 4, 2023.[9] Local counsel was advised by the Clerk's Office that Lead Counsel would need to file notices of appearance in both the main bankruptcy case and the adversary proceeding for him to receive CM/ECF electronic notices of filings in both cases. Local Counsel subsequently filed a notice of appearance and request for notice for Lead Counsel in the main bankruptcy case but not the adversary proceeding.[10]

Plaintiff's complaint, as amended on December 15, 2023 (the "Complaint"), sought an exception to discharge for Plaintiff's judgment claim pursuant to 11 U.S.C. § 523(a)(2), (a)(4) and/or (a)(6).[11] The Complaint argued that Plaintiff's claim should be excepted from Defendant's § 727 discharge because the underlying debt is for funds obtained by false pretenses, false representation, and actual fraud while Defendant was acting in a fiduciary capacity, causing willful and malicious injury to Plaintiff.[12] Defendant filed an answer to the Complaint on January 4,

---

[7] C/A No. 23-02443, ECF No. 1. Contrary to what Plaintiff asserts in paragraph 26 of its Amended Complaint, Defendant's Schedule E/F discloses Plaintiff as a nonpriority unsecured creditor with a claim of $210,600.00 and lists the same business address for Plaintiff as is provided in CM/ECF. *See* ECF No. 4. Plaintiff was sent the Notice of Chapter 7 Bankruptcy Case by first class mail on August 18, 2023. C/A No. 23-02443, ECF No. 10 (Certificate of Service).
[8] C/A No. 23-02443, ECF Nos. 17 and 25. The Court approved the motion as amended on December 6, 2023. *See* C/A No. 23-02443, ECF No. 23.
[9] ECF No. 1.
[10] C/A No. 23-02443, ECF No. 28, filed Jan. 25, 2024. The Court previously addressed the electronic notice issues raised in Plaintiff's Motion to Reconsider in the Court's prior Order Regarding Motion to Reconsider. *See* ECF No. 20, entered July 15, 2024.
[11] ECF No. 4.
[12] Though not relevant to the Court's decision, the Court notes that another adversary proceeding filed against Debtor raised the same grounds for excepting the judgment creditor's claim from discharge. *See Deborah Reed, as Trustee for The PG2 Enterprises Solo 401K Trust v. Peugh*, C/A No. 23-02443-eg, ECF No. 1. That adversary proceeding was closed after the Court entered a consent order memorializing the settlement agreement reached by the parties. *Id*.,

3

2024.[13] The Court issued its Initial Adversary Proceeding Case Management Order on January 8, 2024, requiring the parties to file an Adversary Proceeding Report, which the parties submitted jointly on January 25, 2024.[14] That same day, the Court entered a Scheduling Order outlining various deadlines for pleadings and discovery, which provided, among other things:[15]

> To the extent that the parties do not proceed with mediation or to the extent that mediation does not lead to a settlement of all issues in this adversary proceeding and no motions are filed, ***the parties*** are hereby Ordered to prepare and file no later than 5:00 PM on June 28, 2024, a Joint Pretrial Order, approved by counsel in writing . . . . Failure to submit timely a Joint Pretrial Order or Pretrial Order and exhibits may result in the Court's striking the proceeding from its calendar or considering appropriate sanctions.

Scheduling Order ¶¶ 6, 8 (emphasis added).

Although no motions, discovery requests, Joint Pretrial Order, or other pleadings were filed by the deadlines stated in the Scheduling Order, email correspondence filed with Plaintiff's Motion to Reconsider and Defendant's Response shows that the parties were in communication about the case during the time between when the Scheduling Order was issued and when the Joint Pretrial Order was due. According to the emails submitted to the Court, on March 15, 2024, an associate of Plaintiff's Lead Counsel ("Associate") reached out to Defendant's counsel ("Defense Counsel") to discuss the adversary proceeding and indicated that he had an initial settlement offer to convey on Plaintiff's behalf.[16] The Associate followed up with Defense Counsel on April 16, 2024 and provided the terms of Plaintiff's initial offer for a non-dischargeable debt amount that Plaintiff would accept to settle its claim against Defendant.[17] Defense Counsel responded to the Associate on April 22, 2024, rejecting Plaintiff's offer and providing a counteroffer.[18] On May 10, 2024, the

---

ECF No. 14, entered May 31, 2024.
[13] ECF No. 5.
[14] ECF Nos. 6 and 8.
[15] ECF No. 9.
[16] Motion to Reconsider, Ex. B, pp. 1-2. A copy of this email was also provided in Defendant's Response, Ex. D.
[17] Motion to Reconsider, Ex. B, pp. 3-4; *see also* Response, Ex. E.
[18] Motion to Reconsider, Ex. B, p. 5; *see also* Response, Ex. F.

4

Associate countered Defendant's proposal, advised Defense Counsel that he was leaving Lead Counsel's law firm, and asked that future correspondence be directed to Lead Counsel.[19]

On May 20, 2024, Defense Counsel emailed Lead Counsel to convey another counteroffer from his client, stating that "[Defendant] is willing to settle this adversary proceeding by agreeing that $80,000 of [Plaintiff's] claim is non-dischargeable and would survive the bankruptcy. The remainder of any claims would be subject to the discharge order."[20] On June 12, 2024, Lead Counsel accepted Defendant's May 20th counteroffer by responding: "We have a deal. I will prepare the motion for settlement and settlement agreement for everyone's review."[21]

Uninformed that the parties had reached a settlement, the Court issued an order on July 1, 2024 (the "July 1, 2024 Order") noting the parties' failure to timely file a Joint Pretrial Order by June 28, 2024, as previously ordered, and providing as follows:

> [B]y no later than July 9, 2024 at 10:00 a.m., **the Plaintiff and Defendant** shall file an explanation for the absence of a Joint Pretrial Order, a settlement order concluding this proceeding, or a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1) as made applicable by Fed. R. Bank. P. 7041. To the extent the matter has not been settled, the parties shall also file a Joint Pretrial Order at their earliest convenience, and **in no event later than July 9, 2024 at 10:00 a.m.**, and the Court will then schedule a pre-trial conference at which time it will also address the untimeliness of the Joint Pretrial Order. **Upon the failure to comply with this Order, an order dismissing the action will be entered by the Court**.[22]

(emphasis added). The July 1, 2024 Order was served on Plaintiff by mail, on Defendant by email, and on Local Counsel and Defense Counsel by email CM/ECF notification.[23] On July 2, 2024, Defense Counsel's office emailed Lead Counsel and an associate of Local Counsel inquiring about the settlement documents that Lead Counsel said he would prepare.[24] The email also referenced

---

[19] Motion to Reconsider, Ex. B, p. 7; *see also* Response, Ex. G.
[20] Motion to Reconsider, Ex. B, p. 12; *see also* Response, Ex. H.
[21] Motion to Reconsider, Ex. B, p. 16; *see also* Response, Ex. I.
[22] ECF No. 11.
[23] *See* Certificate of Service, ECF No. 13, filed July 3, 2024.
[24] Response, Ex. J. The July 2nd email was not disclosed in Plaintiff's Motion to Reconsider.

5

the Court's July 1, 2024 Order. On July 5, 2024, Defense Counsel sent a proposed consent order (the "Consent Order") to Lead Counsel and Local Counsel's associate for review and approval to file with the Court.[25] Lead Counsel responded the same day, thanking him and requesting a Word version of the document, which Defense Counsel subsequently provided.[26] On July 8, 2024, Defense Counsel followed up with Lead Counsel and Local Counsel's associate, asking when he could expect to receive Plaintiff's approval to file Consent Order with Lead Counsel's typed signature included.[27] According to Defendant's Response, Defense Counsel made further attempts to follow up with Lead Counsel before the deadline provided in the Court's July 1, 2024 Order.

Receiving no filings or communication from the parties to chambers by July 9, 2024, the Court entered an order dismissing this adversary proceeding on July 12, 2024 (the "Dismissal Order").[28] On the same day the Court entered the Dismissal Order, Plaintiff filed the Motion to Reconsider, which was later amended on July 22, 2024.[29] The Motion to Reconsider informed the Court that Defendant and Plaintiff had reached a settlement agreement on June 12, 2024, and were prepared to submit a consent order memorializing the settlement finalized on July 5, 2024.

Plaintiff explains that the June 28 deadline to file a Joint Pretrial Order and the July 9 deadline to respond to the Court's July 1, 2024 Order were missed because (1) Lead Counsel was not added to the Court's CM/ECF noticing system for this adversary proceeding despite his filing of a notice of appearance in the underlying bankruptcy case, so he was unaware of the Court's July 1, 2024 Order; (2) the Associate working with Lead Counsel and Lead Counsel's secretary had both recently left his firm; and (3) Lead Counsel's law partner, a Chapter 7 trustee in the Western

---

[25] Motion to Reconsider, Ex. B, p. 21; *see also* Response, Ex. K.
[26] Motion to Reconsider, Ex. B, p. 26; *see also* Response, Exs. L and M.
[27] Motion to Reconsider, Ex. B, p. 32; *see also* Response, Ex. N.
[28] ECF No. 14.
[29] ECF Nos. 15 and 23.

6

District of North Carolina, was on unexpected medical leave, thus causing Lead Counsel's caseload to be inordinately busy and delaying the submission of the Consent Order to the Court. The Motion to Reconsider also asserts that following Plaintiff's acceptance of Defendant's final counteroffer, "the deadlines in the Court's Scheduling Order passed without response because the matter between the parties had been settled and a settlement order was to be filed." Moreover, Lead Counsel explained that he "neglected to formally respond" to Defense Counsel after receiving the Word version of the proposed settlement order on July 5, 2024 "because he assumed that [Defense Counsel] would file the Consent Order or settlement report with the Court."[30]

On July 15, 2024, the Court entered an order regarding the Motion to Reconsider (the "July 15th Order") that directed the parties to file a proposed consent order agreeing to the alleged settlement agreement by July 22, 2024. Alternatively, if Defendant did not consent to reconsideration of the Dismissal Order and entry of a settlement order, the July 15th Order provided that the Court would hold a hearing on the Motion to Reconsider.[31] Defendant filed the Response, asserting that Lead Counsel "did not provide any feedback on the draft [consent order], or more importantly, permission to attach [Lead Counsel's] signature to the document to file with the Court" prior to the July 9, 2024 deadline. Notably lacking from the Response is any explanation as to why Defense Counsel did not take other action to comply with the Court's Scheduling Order or July 1, 2024 Order.

After the parties consented to continue the hearing on the Motion to Reconsider, the Court entered a text order indicating that if Plaintiff wished to file a reply to Defendant's Response, such

---

[30] That assumption, however, would be in violation of SC LBR 9011-4. As Defense Counsel indicated in the Response, he never filed the proposed order with the Court because Plaintiff's counsels never conveyed their approval of the proposed order's contents let alone authorization to affix their electronic signatures to the proposed order.
[31] ECF No. 20.

7

reply should be filed by no later than August 26, 2024.[32] Plaintiff thereafter timely filed the Reply. In addition to addressing arguments raised in the Response, the Reply asserts that after the Court issued its July 15th Order, Plaintiff requested that Defense Counsel confirm the prior settlement and allow the presentation of the Consent Order to the Court for consideration. However, Defense Counsel refused such request, notwithstanding his acknowledgement of the parties' settlement in the days prior.

At the hearing on Plaintiff's Motion to Reconsider, Plaintiff's Local Counsel and his associate, along with Lead Counsel and Defense Counsel, appeared. A representative for Plaintiff was also present in the courtroom, and Defendant appeared remotely by videoconference only to observe the hearing. Both Local and Lead Counsel expressed remorse and embarrassment for their part in allowing the adversary proceeding to be dismissed, acknowledging they "dropped the ball." They argued that though both parties are culpable, Plaintiff's negligence was excusable while Defendant's intentional failure to respond to the Court's July 1, 2024 Order was not, and thus the facts weighed in favor of granting the Motion to Reconsider. Defense Counsel denied intentionally ignoring the Court's orders, asserting that he did not know how to respond without Plaintiff's permission to file the proposed consent order, though further questioning by the Court poked several holes in his explanation for why he did not file any response to the July 1, 2024 Order or otherwise inform chambers of the parties' settlement agreement.

The Court also asked counsel at the hearing whether the parties would honor the pre-dismissal settlement agreement if the case was reinstated. Local Counsel indicated Plaintiff would agree to honor the settlement terms, whereas Defense Counsel said he would have to consult with Defendant, as they had not yet discussed that option.

---

[32] ECF Nos. 26 and 28.

8

**CONCLUSIONS OF LAW**

I.    **The Motion to Reconsider Should be Analyzed Under Fed. R. Bankr. P. 9023**

Plaintiff's Motion to Reconsider requests that the Court set aside the Dismissal Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Fed. R. Civ. P. 59(e). Rule 60(b), made applicable in bankruptcy proceedings by Bankruptcy Rule 9024, provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Bankruptcy Rule 9023, which largely adopts Fed. R. Civ. P. 59(e) for application in the bankruptcy context, states that a motion to alter or amend a judgment "shall be filed . . . no later than 14 days after entry of judgment."[33] Fed. R. Bankr. P. 9023.

The Fourth Circuit has held that if a post-judgment motion is filed within the period of time from the entry of judgment as set forth within Rule 59(e) "and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled." *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978) (some courts have referred to this holding as the "*CODESCO* Rule"). Thus, a motion filed pursuant to both Rule 59(e) and Rule 60(b) "should be analyzed only under Rule 59(e) if it was filed no later than 10 days [or 14 days in the bankruptcy context] after entry of the adverse judgment and seeks to correct that judgment." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010).[34]

---

[33] The Advisory Committee Notes for the 2009 Amendments to Bankruptcy Rule 9023 observe that while Fed. R. Civ. P. 59 was amended to extend the deadline for these actions from 10 days to 28 days after entry of judgment, that deadline corresponds with the 30-day deadline for filing a notice of appeal in a civil case under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, which previously provided a 10-day deadline. The 2009 Amendments changed all 10-day deadlines in the Bankruptcy Rules to 14-day deadlines. Because the deadline for filing a notice of appeal in a bankruptcy case is now 14 days after entry of judgment, the deadline in Bankruptcy Rule 9023 is also 14 days so as not to effectively override the notice of appeal deadline under Bankruptcy Rule 8002(a).

[34] Plaintiff's Reply misreads *Robinson* in asserting that notwithstanding the rule quoted above, the Fourth Circuit ruled on both Fed. R. Civ. P. 59(e) and 60(b) grounds. However, the *Robinson* court clearly states that there was no error

Though neither *CODESCO* nor *Robinson* were bankruptcy cases, bankruptcy courts in the Fourth Circuit have applied their rules regarding the timing of Fed. R. Civ. P. 59(e) motions when reviewing motions to reconsider in the bankruptcy context. *See*, *e.g.*, *In re Goss*, No. 12–00395–dd, 2012 WL 4757800, at *3 (Bankr. D.S.C. Oct. 5, 2012) (citing rule in *Robinson* and reviewing a motion for reconsideration filed four days after the challenged order under Rule 59(e)); *In re Coker*, No. 14–00223–5–RDD, 2014 WL 6660370, at *4 (Bankr. E.D.N.C. Nov. 21, 2014); *In re Baltimore Behavioral Health, Inc.*, No. 12–32919–RAG, 2014 WL 4792184, at *4 (Bankr. D. Md. Sept. 24, 2014); *see also In re Coats-Califf*, No. 19-04310-JW, 2020 WL 257315, at *5 (Bankr. D.S.C. Jan. 8, 2020) (construing a motion to reconsider under 59(e) based on the timing of when the motion was filed where movant did not specify whether the motion was brought pursuant to 59(e) or 60(b)).

Plaintiff argues that the *Robinson/CODESCO* rule is logically inconsistent with Bankruptcy Rule 8002(b)(1), which suggests it is possible to file Rule 9024 motions—relying on Fed. R. Civ. P. 60(b)—within 14 days of the challenged judgment. *See* Reply at 6; Fed. R. Bankr. P. 8002(b)(1)(D) (providing that "[i]f a party files in the bankruptcy court any of the following motions," including "a motion for relief under Rule 9024 . . . filed within 14 days after the judgment is entered," within the time allowed, then "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion"). While the Fourth Circuit has recognized that the rule "was not designed to constrain a district court's substantive analysis of a post-judgment motion," it still applies in this Circuit and this Court is bound to apply it. *MLC*

---

in the lower court's decision to consider the appellant's motion, which was filed nine days after entry of judgment pursuant to both Rule 59(e) and Rule 60(b), under only Fed. R. Civ. P. 59(e). 599 F.3d at 411-12. While the *Robinson* court does address the Rule 60(b) argument, it indicates that even if the lower court erred in ignoring the Rule 60(b) grounds, "we do not believe that analyzing the motion under Rule 60(b) would have helped Appellant." Thus, the analysis of the Rule 60(b) argument was hypothetical dicta, as the Fourth Circuit affirmed the lower court's denial of appellant's motion under Rule 59(e).

10

*Automotive LLC v. Town of Southern Pines*, 532 F.3d 269, 278 (4th Cir. 2008) (quoting *Jennings v. Rivers*, 394 F.3d 850, 855 (10th Cir. 2005)). More specifically, in *MLC Automotive*, the Fourth Circuit concluded:

> The *CODESCO* rule . . . . ["]was devised for purposes of appellate review under a previous version of Fed. R. App. P. 4(a)." . . . In 1993, however, FRAP 4 was amended . . . . Thus, a motion filed within ten days of the original judgment need not be considered a Rule 59 motion in order to preserve appellate review of the underlying order. Other circuits have recognized this change and now label a motion as one under 59(e) or 60(b) "based on the reasons expressed by the movant, not the timing of the motion."
> . . .
> We, however, have continued to cite and apply *CODESCO* following the amendment to FRAP 4. . . . While we believe this approach is no longer appropriate, "[a]s a panel, we cannot overrule a prior panel and 'are bound to apply principles decided by prior decisions of the court to the questions we address.'"

*Id*. at 278 (citations omitted); *see also Daulatzai v. Maryland*, 97 F.4th 166, 177-78 (4th Cir. 2024) (detailing the material differences between Rules 59(e) and 60(b)).

The Court recognizes that the *CODESCO/Robinson* rule limits what substantive grounds may be considered in determining whether to set aside the Dismissal Order. However, this Court is bound by Fourth Circuit precedent. Plaintiff filed the Motion to Reconsider on the same day as the Dismissal Order. Accordingly, because the Motion to Reconsider was filed within 14 days of the entry of the judgment at issue, the Court will consider Plaintiff's Motion to Reconsider under only Rule 59(e).[35]

### II.    The Dismissal Order Should Be Set Aside to Prevent Manifest Injustice

Pursuant to Rule 59(e), "the Fourth Circuit recognizes three grounds to amend an earlier judgment: '(1) to accommodate an intervening change in the controlling law; (2) to account for

---

[35] It appears that Plaintiff would still prevail under Fed. R. Civ. P. 60(b). As mentioned earlier, under that rule, a court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Lead Counsel's affidavit, along with the arguments offered at the hearing on the Motion to Reconsider, point to what appear to be plausible arguments to support relief pursuant to—at a minimum—Rule 60(b)(6).

11

new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *In re Auto Money North LLC*, 649 B.R. 704, 706 (Bankr. D.S.C. 2023) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998)). Plaintiff's Motion to Reconsider raises the "manifest injustice" grounds. As the other options do not appear relevant to the facts before it, the Court has considered whether its Dismissal Order should be reconsidered only on the last basis. Based on these grounds, the Court concludes that the Dismissal Order should indeed be set aside.

While neither Bankruptcy Rule 9023 nor the Federal Rules of Civil Procedure define what qualifies as "manifest injustice," courts in this District consider manifest injustice present where a court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *South Carolina v. U.S.*, 232 F. Supp. 3d 785, 799 (D.S.C. Feb. 7, 2017) (citations omitted); *see also Register v. Cameron & Barkley Co.*, 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007) (quoting *In re Oak Park Calabasas Condominium Ass'n*, 302 B.R. 682 (Bankr. C.D. Cal. 2003)) (providing that manifest injustice involves "an error by the court that is 'direct, obvious, and observable'"). The Fourth Circuit has also relied on guidance from the D.C. Circuit as to when manifest injustice is absent:

> In *Robinson* . . . we cited with approval *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004), which affirmed a district court's denial of a Rule 59(e) motion when "the dismissal of the [] suit might have been avoided through the exercise of due diligence." And the D.C. Circuit held in another case that "[m]anifest injustice does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004) (cleaned up).

*Arvon v. Liberty Mutual Fire Ins. Co.*, No. 20-1249, 2021 WL 3401258, at *3 n.2 (4th Cir. 2021). Moreover, the movant "must show that it acted with diligence and that it stands to suffer injury

12

that is 'direct, obvious, and observable,' rather than mere potential prejudice." *Hartford Cas. Ins. Co. v. Farley Assocs.*, No. 0:13-547-CMC, 2014 U.S. Dist. LEXIS 117810, at *14 (D.S.C. Aug. 25, 2014) (citations omitted). "[C]ourts are given wide leeway in determining what constitutes manifest injustice for purposes of a motion under Rule 59(e)." *In re Boyd*, 618 B.R. 133, 162 (Bankr D.S.C. 2020) (quoting *In re Pavilack*, C/A No. 10-0605-jw, slip op. (Bankr. D.S.C. Sept. 20, 2011)).

As a preliminary matter, any error that has resulted in manifest injustice here was not due to a lack of authority on the Court's part. Plaintiff's Reply seems to question whether it was appropriate for the Court to have dismissed this adversary proceeding when such dismissal is effectively with prejudice. *See* Reply at 16-18. Local Counsel clarified at the hearing that Plaintiff does not dispute that the Court was authorized to act as it did. Nevertheless, to the extent that there is any question as to whether the Court erred in entering the Dismissal Order *sua sponte*, the Court will take this opportunity to briefly address the matter here.

Pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, made applicable in adversary proceedings through Bankruptcy Rule 7016, the Court may, "[o]n motion or on its own, . . . issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C) (discussing permissible sanctions). Bankruptcy Rule 7016 adds that the Court "shall decide, on its own motion or a party's timely motion, whether: . . . to take some other action." Fed. R. Bankr. P. 7016(b)(3). The parties failed to act as ordered by the Court's Scheduling Order and July 1, 2024 Order; thus, the Court had the discretion to sanction the parties by just means, including dismissing the adversary proceeding. To be clear, had the Court known the full extent of the situation and been made aware that the parties had settled the dispute, it would not have dismissed

13

the case. The Court, however, was kept in the dark as to the settlement that had been reached, requiring it to now unravel the predicament the parties find themselves in.

Plaintiff argues that the Court should set aside the Dismissal Order to prevent manifest injustice to Plaintiff, "who at most is at equal fault with the Defendant." Plaintiff cites four main reasons why upholding the Dismissal Order would constitute manifest injustice:

> (1) Plaintiff acted with diligence in negotiating a settlement agreement between the parties that is fair, just and reasonable, and to not honor that agreement would not only cause injury that is direct, obvious and observable, as Dismissal here is effectively with prejudice, but would also be contrary to established law; (2) Plaintiff did not demonstrate egregious conduct or act deliberately to delay the resolution of the proceeding; (3) Defendant would not be prejudiced in any way and to reward a party, who intentionally did not fulfill the same reporting duties and obligations ordered by the Court and instead strategically remained silent to coax a Dismissal and achieve a windfall for the Debtor while the Plaintiff suffers an irreversible penalty, would be manifestly unjust; and (4) the Court should examine whether a less drastic and mutually applicable remedy, if one is necessary, would be sufficient under the circumstances in this matter.

Reply at 7-8.

Pursuant to Bankruptcy Rule 4007(c), any complaint to determine the dischargeability of a debt under § 523(c) must be filed within 60 days of the first date set for the § 341(a) meeting of creditors. When this case was dismissed, Plaintiff was already time barred from refiling its complaint, meaning that if the Court upholds the Dismissal Order, Plaintiff's judgment claim against Defendant would be fully dischargeable. The Chapter 7 Trustee reported that there is no property available for distribution from Defendant's bankruptcy estate over and above that exempted by law,[36] and Defendant has refused to honor the settlement agreement now that Plaintiff's § 523 action has been dismissed. Accordingly, if the Dismissal Order stands, Plaintiff will be unable to recover any portion of its judgment either in or out of bankruptcy. Such a result would cause direct, obvious, and observable injury to Plaintiff that is clearly more than mere

---

[36] *See* C/A No. 23-02443-eg, ECF No. 27, entered Jan. 3, 2024.

14

potential prejudice.

In his Response, Defendant argues that it is not a manifest injustice for Plaintiff to suffer the consequences of its counsel's lack of diligence in finalizing the written settlement agreement and complying with Court-ordered deadlines. Citing *In re T 2Green, LLC*, 364 B.R. 592, 606 (Bankr. D.S.C. 2007), Defendant further asserts that manifest injustice does not exist where the movant failed to act until after the entry of the order being reconsidered if such outcome could have been easily avoided. What Defendant fails to note is that the dismissal could have also been avoided if he had complied with the Court's July 1, 2024 Order, which required action from both parties—not just Plaintiff. Instead of notifying the Court that the parties had reached a settlement and requesting additional time to file a signed consent order, Defendant remained silent to his ultimate advantage when the adversary was dismissed.

The Court agrees with Plaintiff that, contrary to the arguments in Defendant's Response, Defendant's failure to act was not justified by his belief that the case was not being "meaningfully" prosecuted. *See* Reply at 13. Even if the lack of discovery or any other trial preparations on Plaintiff's side may have led Defendant to believe there was nothing to disclose in the required pretrial order, Defendant still had a duty—as did Plaintiff—to update the Court about the status of the case. At the hearing, Defense Counsel further proffered that he could not inform the Court about the pending settlement because the parties are prohibited from communicating with the Court *ex parte*. However, Defense Counsel could have emailed chambers with opposing counsel on copy, which would not constitute *ex parte* communication. There was also nothing preventing Defense Counsel from independently filing "an explanation for the absence of a Joint Pretrial Order" in lieu of a signed settlement agreement, as the July 1, 2024 Order suggested. Defendant did none of these things.

15

To be clear, the Court finds both parties at fault for what has happened in this case. While it may be understandable how Lead Counsel was distracted under the circumstances presented, there is no excusing the proverbial "sleeping at the wheel" which led to the situation Plaintiff now finds itself in.[37] Ultimately, the Court is persuaded that upholding the Dismissal Order with the knowledge that the parties had settled the case pre-dismissal would be a harsher, more unjust sanction for Plaintiff's noncompliance than reinstating the case would be for Defendant's equally culpable inaction and refusal to honor the pre-dismissal settlement agreement.

For these reasons, the Court finds that, pursuant to Fed. R. Civ. P. 59(e), made applicable in bankruptcy proceedings by Bankruptcy Rule 9023, the Motion to Reconsider should be granted to prevent "manifest injustice." The Court will not go as far as approving the pre-dismissal settlement agreement. Though Plaintiff says it will abide by the agreement and raises strong arguments as to its enforceability, Defendant has not yet indicated whether he will honor the settlement once the case is reinstated, and the Court does not need to address that issue now. Furthermore, while the Scheduling Order warned that the Court could impose sanctions for the parties' noncompliance, the time and expense spent in responding to what the Court perceives to be an unnecessary delay and distraction, as well as a waste of limited judicial resources, are sufficient sanction on both sides at this time.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider is granted. The Dismissal Order shall be vacated, and the above-captioned adversary proceeding shall be reinstated. The parties may then file the signed proposed settlement order or seek other relief within ten (10) days of the entry of this Order.

**AND IT IS SO ORDERED.**

---

[37] The Court also notes that Local Counsel, who did not assert any circumstances impairing his ability to comply with the Court's orders, shared with Lead Counsel a duty under SC LBR 2090-1(b) to "keep each other fully informed and engaged in all material aspects of the case."

16